UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PABLO FRANCO
aka Casper,

                        Petitioner-Defendant,

v.

UNITED STATES OF AMERICA,

                        Respondent-Plaintiff.

Case No.:  12-CR-0236-GPC-3
                  19-CV-493-GPC

**AMENDED ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**[Dkt. No. 2195.]**

On March 12, 2019, Petitioner Pablo Franco ("Petitioner"), a federal prisoner proceeding *pro se*, moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255") alleging ineffective assistance of counsel ("IAC") and a violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (Dkt. No. 2195.) On June 14, 2020, the United States of America ("the Government") opposed, alleging the petition is untimely, raises matters that could have been raised on direct appeal, and fails on the merits. (Dkt. No. 2277.) On October 22, 2020, after waiting more than three months for

1

Petitioner to file a reply,[1] the Court denied Petitioner's motion to vacate, set aside, or correct his sentence and denied a certificate of appealability. (Dkt. No. 2299.)

On November 13, 2020, Petitioner filed a request under Federal Rule of Civil Procedure ("Rule") 60(b) seeking to vacate the Court's judgment in order to allow him to file a reply to the government's opposition. (Dkt. No. 2300.) On November 16, 2020, the Court granted Petitioner's Rule 60(b) motion to allow time to file his reply considering the extraordinary circumstances outside of his control. (Dkt. No. 2301.) On March 18, 2021, Petitioner filed his reply that *Brady* evidence not withheld by the Government and not investigated by his trial counsel could have raised doubt in the jury as to his conviction. (Dkt. No. 2318.)

For the following reasons, the Court DENIES Petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and DENIES a certificate of appealability.

## I.   BACKGROUND

In 2010, a joint federal and state task force undertook an investigation of extortion and drug trafficking by the Mexican Mafia ("Mafia") and local street gangs in San Diego County. (Dkt. No. 2101 at 9.[2]) On January 19, 2012, an indictment was filed charging forty alleged Mafia members and associates with engaging in a racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). (Dkt. No. 1.)

The indictment alleged that Petitioner was a high-level associate of the Mafia with "responsibility over the distribution of narcotics and the 'taxation' of individuals

---

[1] Petitioner's reply to the Government's responsive memorandum was due by July 10, 2020. (*See* Dkt. No. 2275.)

[2] Page numbers based on the CM/ECF pagination.

2

operating within the geographic areas controlled by the Mexican Mafia." (*Id.* at 10.) According to the indictment, the Mafia exerts control over street gangs throughout Southern California through collection of a "tax," the payment of which permits gang members to influence and traffic narcotics in the Mafia's territories. (*Id.* at 5.)  Failure to pay the tax results in the Mafia placing a "'green light' on the members of the [indebted] gang, which authorizes Mexican Mafia members and associates, as well as rival gangs, to assault and/or murder members of the gang, both in the community and within the penal system, until the gang pays the tax." (*Id.*)

At all times relevant to the indictment, Petitioner was incarcerated at R.J. Donovan State Prison ("Donovan"), a California Department of Corrections and Rehabilitation facility. (*Id.* at 10.) The indictment alleged that while Petitioner was incarcerated, he ensured that "a portion of the 'taxes' or proceeds collected in the name of the Mexican Mafia are sent to Mexican Mafia members." (*Id.*) The indictment further contended Petitioner had "authority to participate in, and order, the assault of individuals who act contrary to the goals of the Mexican Mafia." (*Id.*)

After some of the indicted defendants entered guilty pleas, two superseding indictments were filed on August 2, 2012, (Dkt. No. 627), and June 6, 2013, (Dkt. No. 1115). On June 18, 2013, Petitioner pled not guilty and opted for trial with seven other defendants. (Dkt. No. 1157.)

Evidence at trial revealed Petitioner was a high-ranking member of the Varrio Fallbrook Locos gang and an associate of the Mexican Mafia. *United States v. Barragan*, 871 F.3d 689, 697 (9th Cir. 2017). Under direction from co-defendant Rudy Espudo ("Espudo"), Petitioner oversaw Mafia activities inside Donovan and indirectly oversaw activities within Vista Detention Facility ("Vista") through his own direction of co-defendant Francisco Gutierrez ("Gutierrez"). (Dkt. No. 1504 at 1.) Two inmates

3

cooperating with the Government testified against Petitioner at trial, Donovan inmate Alfonso Mata ("Mata") and Vista inmate Everst Cruz ("Cruz"). (Dkt. No. 1442 at 5.)

Mata testified that he helped Petitioner collect taxes from drug-dealing inmates on behalf of the Mafia. (Dkt. No. 2101 at 12.) At Petitioner's instruction via handwritten notes known as "kites," Mata sent tax proceeds to Petitioner's mother, who then forwarded the money to a Mafia member. (*Id.*) Receipts, bank statements, intercepted phone calls, and taped conversations confirmed that after Petitioner's mother received money from Mata, Petitioner's mother and sister forwarded the money to a Mafia member. (*Id.*)

Cruz testified before and during trial that Petitioner ordered his beating at Vista and then threatened him if he testified at trial. (Dkt. No. 1696 at 29:15–22; Dkt. No. 1504 at 2, 14.) Under direction from Espudo, Petitioner instructed Gutierrez to order Cruz's assault that took place on January 15, 2011, because Cruz's gang was behind in tax payments. (Dkt. No. 1504 at 2.) Cruz also testified that Petitioner twice made threats against him and his family if he testified against Petitioner at trial. (*Id.* at 14.)

On October 2, 2013, after a six-week trial, a jury found Petitioner guilty of conspiring to participate in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). (Dkt. No. 1434.) On October 23, 2013, Petitioner was sentenced to imprisonment for 240 months to be served concurrently with Superior Court of California, County of San Diego case no. SCN250257. (Dkt. No. 1589 at 1–2.)

On October 30, 2013, Petitioner filed notice of appeal of his final judgment to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 1595.) On September 8, 2017, the Ninth Circuit affirmed Petitioner's conviction and sentence. *Barragan*, 871 F.3d at 719. On November 17, 2017, the petition for a panel rehearing and rehearing en banc was denied. (Dkt. No. 2096.) On February 22, 2018, Petitioner filed for a petition

4

for a writ of certiorari with the United States Supreme Court, which was subsequently denied on April 16, 2018. *Franco v. United States*, 138 S. Ct. 1565 (2018).

On March 12, 2019, Petitioner filed the present motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, which is fully briefed. (Dkt. Nos. 2195, 2277, 2318.)

## II.   LEGAL STANDARD

Section 2255 authorizes this Court to "vacate, set aside or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III.   DISCUSSION

For the following reasons, the Court finds that Petitioner's claims do not warrant federal relief under § 2255.

### A.   Statute of Limitations

The Government alleges that the Court should deny Petitioner relief under § 2255 because the petition was filed over one year after the Ninth Circuit affirmed the Petitioner's conviction and sentence. (Dkt. No. 2277.) Section 2255 provides that "a one-year period of limitation applies . . . and runs from the latest of the date on which the judgment of the conviction becomes final." 28 U.S.C. § 2255(f)(1). For the purpose of starting the clock on § 2255's one-year limitation period, finality attaches when the

1  Supreme Court "affirms a conviction on the merits on direct review or denies a petition
2  for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v.*
3  *United States*, 537 U.S. 522, 527 (2003).

4      Here, the Government does not account for the entirety of the relevant procedural
5  history. After affirming Petitioner's conviction and sentence on September 8, 2017, the
6  Ninth Circuit reviewed and denied Petitioner's motion for a panel hearing on November
7  27, 2017. (Dkt. No. 2096.) Moreover, the Government fails to acknowledge that
8  Petitioner filed a petition for writ of certiorari to the Supreme Court on February 22,
9  2018, which was denied on April 16, 2018. *Franco*, 138 S. Ct. at 1565.

10     As such, the clock on Petitioner's one-year time limitation began when the
11  Supreme Court denied Petitioner a writ of certiorari on April 16, 2018. *See Clay*, 537
12  U.S. at 527. Less than one year later, Petitioner filed his § 2255 motion on March 12,
13  2019. (Dkt. No. 2195.) Therefore, the petition is timely.

14     **B.    Procedural Default**

15     Next, the Government alleges that even if Petitioner's motion is timely, Petitioner
16  procedurally defaulted both his IAC and *Brady* claims by not raising either claim on
17  direct appeal. (Dkt. No. 2277 at 3–4.) Generally, claims not raised by a convicted federal
18  criminal defendant on direct appeal is procedurally defaulted and may not be brought on
19  collateral review under § 2255 without a showing of either cause and prejudice, or actual
20  innocence in response to the default. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

21     **1.    Ineffective Assistance of Counsel**

22     However, "an ineffective-assistance-of-counsel claim may be brought in a
23  collateral proceeding under § 2255, whether or not the petitioner could have raised the
24  claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). In light of
25  the Supreme Court's holding in *Massaro*, the Court may consider the merits of
26  Petitioner's IAC claim, which is discussed below. *See id.*

27

28

1

### 2.    *Brady* Violation

2       Because Petitioner did not raise the claim of a *Brady* violation against the

3   Government on direct appeal, Petitioner must demonstrate "cause" and actual "prejudice"

4   to overcome procedural default. *See Bousley,* 523 U.S at 622; *Murray v. Carrier*, 477

5   U.S. 478, 485 (1986). An attorney's errors during appeal on direct review may provide

6   cause to excuse a procedural default. *Martinez v. Ryan*, 566 U.S. 1, 11 (2012). Another

7   avenue for § 2255 movants to overcome procedural error is by a showing of actual

8   innocence. *Bousley*, 523 U.S. at 623. "To establish actual innocence, petitioner must

9   demonstrate that, 'in light of all evidence, it is more likely than not that no reasonable

10  juror would have convicted him.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28

11  (1995)).

12      Here, Petitioner is unable to show cause to overcome procedural default. Petitioner

13  does not allege ineffective assistance from his appellate counsel; but only claims

14  ineffective assistance from his trial counsel. (*See* Dkt. No. 2195.) Moreover, Petitioner

15  has not shown "actual innocence" such that "no reasonable juror would have convicted

16  him." *See Bousley*, 523 U.S. at 623. Petitioner claims he was "wrongly convicted" of

17  RICO conspiracy due to Mata and Cruz's testimonies. (Dkt. No. 2318 at 2, 5.) However,

18  this does not address the evidence presented at trial that was not tied to Mata or Cruz. For

19  example, "Recorded phone conversations indicted that Gutierrez helped smuggle drugs

20  into the Vista detention facility, collected tax money from inmates, and delivered that

21  money to Franco." *Barragan*, 871 F.3d at 698; *see also id.* n.7. Irrespective of evidence

22  that would have been impeaching against Mata or Cruz, Petitioner has not shown he is

23  "actually innocent" of his conviction for RICO conspiracy.

24      As such, the Court finds both of Petitioner's *Brady* claims are procedurally barred.

25  *See Bousley*, 523 U.S. at 622.  However, even if both *Brady* claims were not procedurally

26  barred, the two claims would nonetheless fail on the merits, as discussed below.

27                                                    7

28

1

**C.    Ineffective Assistance of Counsel**

2

In his claim for ineffective assistance of counsel, Petitioner presents five

3    arguments that his trial counsel (1) failed to pursue inter-cell recording devices from

4    Donovan; (2) failed to investigate cell phone photographs of the "kites" between

5    Petitioner and Mata; (3) failed to withdraw a motion to dismiss based on a defense

6    strategy that Petitioner disagreed with; (4) committed sentencing errors; and (5) failed to

7    provide the court with information as to how the law is applied to concurrent federal and

8    state court sentences. (Dkt. No. 2195 at 12–14.) The Government contends that

9    Petitioner's trial counsel acted reasonably and any failure to raise weak arguments in

10   favor of stronger arguments did not prejudice Petitioner. (Dkt. No. 2277 at 5.) Petitioner

11   replies addressing only the first two arguments that his counsel was negligent in failing to

12   subpoena the recording devices and photographs of "kites."[3] (Dkt. No. 2318 at 1, 3.)

13

To prevail on an IAC claim, a petitioner must show both (i) deficient performance

14   under an objective standard of reasonableness; and (ii) prejudice. *Strickland v.*

15   *Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he

16   challenger's burden is to show that counsel made errors so serious that counsel was not

17   functioning as the counsel guaranteed the defendant by the Sixth Amendment."

18   *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687)

19   (internal quotations omitted). To demonstrate prejudice, the petitioner must show that

20   "but for counsel's unprofessional errors," there is a reasonable probability "the result of

21   the proceeding would have been different." *Strickland*, 466 U.S. at 694. The likelihood of

22

23

_____

24

25   [3] Petitioner also raised for the first time, in the reply, that his counsel "failed to subject the
Government's case to 'any meaningful adversarial testing.'" (Dkt. No. 2318 at 3 (citing *United States v.*
26   *Cronic*, 466 U.S. 468, 659 (1984)).)  However, Petitioner bases this legal theory on the same underlying
facts that are assessed below.

27

28

a different result must be substantial, not just conceivable. *Richter*, 562 U.S. at 112. A petitioner must allege specific facts—not conclusory allegations—to warrant relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Furthermore, reviewing courts must apply a "strong presumption" that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (courts must apply "the strong presumption of competence that *Strickland* mandates."). Lastly, a court need not first determine whether counsel's performance was deficient before considering the second prong of the *Strickland* test. *See Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) ("If it is easier to dispose of an [IAC] on the ground of lack of sufficient prejudice, . . . that course should be followed.") (quoting *Strickland*, 466 U.S. at 697).

### 1.     Failure to Investigate Inter-Cell Recording Devices

Petitioner alleges that he received ineffective assistance of counsel when his trial counsel did not investigate exculpatory and impeachment evidence by subpoenaing recording devices in Petitioner's cell. (Dkt. No. 2195 at 12–13.) In response, the Government argues it is objectively reasonable that Petitioner's counsel would choose not to subpoena the recordings because it likely "would only have buttressed the case that [Petitioner] was a high-ranking Mexican Mafia associate overseeing and facilitating the criminal activities presented at trial." (Dkt. No. 2277 at 9–10 n.3.) In reply, Petitioner claims recordings of conversations between Espudo and himself would show he "became aware of [Cruz's] assault after the fact," thereby challenging the Government's claim that Petitioner and Espudo ordered Cruz's assault. (Dkt. No. 2318 at 2–3.) Without specificity, Petitioner claims that recordings in his "own words and those of [] Mata would have impeached [] Mata and [] Cruz['s] hearsay testimony." (*Id*. at 2.) Petitioner argues he was harmed by counsel's failure to investigate when he did not subpoena the

1   evidence because Mata and Cruz's testimonies were used to both convict him of RICO

2   conspiracy and enhance his sentencing. (Dkt. No. 2318 at 2.)

3        Counsel has a duty to "investigate and introduce into evidence records that

4   demonstrate factual innocence, or that raise sufficient doubt on that question to

5   undermine confidence in the verdict." *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir.

6   2001). To show prejudice on an IAC claim, Petitioner must provide a showing that

7   further investigation would have revealed favorable evidence. *See Hendricks*, 17 F.3d at

8   1042. However, when evaluating an IAC claim based on the duty to investigate, the court

9   must consider the claim "in light of the strength of the government's case." *Eggleston v.*

10  *United States*, 798 F.2d 374, 376 (9th Cir. 1986); *see, e.g., Stanford v. Ryan*, 692 F.

11  App'x 339, 341 (9th Cir. 2017) (holding failure of the prejudice prong of a prisoner's

12  *Strickland* claim against his counsel for failure to interview key witness in murder charge

13  where "testimony likely would not have overcome the government's physical evidence

14  inculpating [defendant]"); *Winston v. Neven*, 545 F. App'x 684, 685 (9th Cir. 2013)

15  (holding a prisoner was not prejudiced by his counsel's failure to interview a victim

16  before trial because "[t]he jury heard [the victim's] testimony and, after weighing it

17  against the conflicting testimony and physical evidence presented at trial, rejected his

18  account of the shooting").

19       Here, Petitioner has not met his burden of showing the evidence would raise

20  sufficient doubt as to "undermine confidence in the verdict." *See Bragg*, 242 F.3d at

21  1088. Against the backdrop of the strength of the Government's case, which the Court

22  must consider in a claim of an alleged failure to investigate, *see Eggleston,* 798 F.2d at

23  376, Petitioner fails to show that he was prejudiced. As explicated by the Ninth Circuit on

24  direct appeal, "[t]he evidence against [] Franco, and Gutierrez was overwhelming, and

25  they do not argue otherwise." *Barragan*, 871 F.3d at 708. For example, Mata "testified

26  that he helped Franco collect taxes from drug-dealing inmates on behalf of the Mafia." *Id*.

27

28

1   at 697–98. Receipts confirmed that Mata forwarded tax proceeds to Petitioner's mother,

2   and "intercepted phone calls, taped conversations, and a bank statement confirmed that

3   [Petitioner's] mother and sister then forwarded the money to a Mafia member." *Id*. In an

4   intercepted conversation, Petitioner's mother stated that Petitioner's sister had $600 for a

5   Mafia member. *Id.* at n.5. This was supported by evidence of a bank statement, which

6   showed a $600 deposit in the Mafia member's bank account the next day. *Id.*

7       Accordingly, with "overwhelming" evidence that supplements the testimony of

8   Mata, which was ultimately relied upon to convict Petitioner of conspiracy in violation of

9   RICO, Petitioner was not prejudiced by his trial counsel's failure to subpoena

10  impeachment evidence against Mata. *See James*, 24 F.3d at 27; *see also Stanford*, 692 F.

11  App'x at 341; *Winston*, 545 F. App'x at 685.

12      Therefore, the Court DENIES Petitioner's claim of ineffective assistance of

13  counsel for failing to investigate the recording devices.

### 2.   Failure to Investigate Photographs of "Kites" on Cell Phone

15      Petitioner argues that he received ineffective assistance of counsel when his

16  attorney did not further investigate alleged photos of the "kites" contained on a smuggled

17  cell phone turned over by Mata to officers at Donovan. (Dkt. No. 2195 at 13.) The

18  Government contends that defense counsel had the opportunity to view the evidence at

19  FBI headquarters and the prosecution did not withhold any material evidence because the

20  material did not exist by the time of the instant case. (Dkt. No. 2277 at 8.) Petitioner

21  states in reply that his counsel failed to perform his "due diligence obligation" when he

22  allowed the Government to rely on Mata's hearsay testimony of the "kites." (Dkt. No.

23  2318 at 3.)

24      As previously stated, defense counsel has a "duty to make reasonable

25  investigations or to make a reasonable decision that makes particular investigations

26  unnecessary." *Strickland*, 466 U.S. at 691. This includes a duty to "investigate and

27

28

introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict", *Bragg*, 242 F.3d at 1088, as well as a "duty to investigate the prosecution's case and to follow up on any exculpatory evidence." *Curiel v. Allison*, Case No. CV 10-0301, 2018 WL 9815624, at *10 (C.D. Cal. July 23, 2018) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384–85 (1986) (holding that counsel rendered ineffective assistance by not requesting any discovery) *and Duncan v. Ornoski*, 528 F.3d 1222, 1234–35 (9th Cir. 2008) (holding that counsel should have pursued exculpatory blood evidence when counsel learned of its existence)). However, "the duty to investigate and prepare a defense is not limitless, . . . it does not necessarily require that every conceivable witness be interviewed or that counsel must pursue every path until it bears fruit or until all conceivable hope withers." *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009).

Here, in response to Petitioner's motion in limine, the Government made available to the defense the one cell phone found in Mata's television. (Dkt. No. 1162 at 65 ("the Government will make arrangements for defense counsel to view the physical evidence").) Contrary to Petitioner's allegation that his counsel failed to investigate the chain of custody of the cell phone photos, (Dkt. No. 2195 at 13), Petitioner's counsel made clear on the record his demand to speak with "someone who had control of the situation at Donovan, someone who kept records of the different kites that were circulated, . . . and to give us an accounting and a record." (Dkt. No. 1698 at 23:25–24:4.) Nevertheless, after counsel traveled to Donovan and spoke with prison personnel, he was shown a blank phone and was told none of the other phones were still in existence. (Dkt. No. 1699 at 7:11–9:20.) Petitioner acknowledges that his trial counsel traveled to Donovan and was shown a blank cell phone. (Dkt. No. 2195 at 13.)

Not only did counsel follow-up on potential exculpatory evidence, he forcefully advocated on Petitioner's behalf when he objected to Mata's testimony on the grounds he

12

did not receive *Brady* material prior to trial. (Dkt. No. 1698 at 18:2–15.) Specifically, Petitioner's trial counsel stated:

> [T]here was information given to the officers at Donovan, which I believe the Government has access to them, which it should be Brady material. There's statements made my[*sic*] client, supposedly, in kites and other forms of information. There was a phone call supposedly that he made. I need to know from what phone to what phone. None of that information has been made available, your Honor. I would object to the testimony of Mr. Mata as to those things unsupported by the evidence, and the evidence does exist.

(*Id.* at 18:6–15.) Once Petitioner's trial counsel brought the issue to the court's attention, the court inquired with the Government about the alleged *Brady* material, and Petitioner's counsel arranged to interview Mata's handler while he was at Donovan. (*Id.* at 26:3–11.) Nevertheless, despite objection from Petitioner's counsel, the court denied Petitioner's motion to strike Mata's testimony and found there were no *Brady* violations. (Dkt. No. 1699 at 13:9–18.) Hence, Petitioner's counsel satisfied his duty to conduct an objectively reasonable investigation. *See Strickland*, 466 U.S. at 691.

Assuming, *arguendo,* that counsel failed to conduct a reasonable investigation into potential cell-phone evidence, Petitioner's claim also fails to state with specificity how the evidence would have impacted the outcome of the trial. *See James,* 24 F.3d at 26. Petitioner merely states that the "kites" are "key pieces of evidence [which] would have either convicted me or proven my innocence in my own words and written in my own hand." (Dkt. No. 2195 at 15.) Additionally, Petitioner makes a conclusory allegation that his counsel "allowed the government to steamroll the jury with hearsay testimony that could have, and should have been impeached using withheld *Brady* material: Recordings and notes 'kites' in A. Mata's own words contradicting and flat out debunking government's accusations against petitioner." (Dkt. No. 2318 at 3.) However, Petitioner fails to explain what exactly the "kites" would have shown that would have produced a

13

different outcome. Without any specific showing of how the evidence would have benefited him at trial, Petitioner's claim is a conclusory allegation that fails to provide sufficient specificity to allow the Court to evaluate his claim, *see James,* 24 F.3d at 26; and fails under *Strickland* because it fails to provide a showing of prejudice, *see Patrick v. United States*, Nos. 08-CV-732 & 02-CR-1714, 2008 WL 3861690, at *1 (S.D. Cal. Aug. 19, 2008) (denying IAC claim for counsel's failure to investigate or present available exculpatory material at trial where petitioner failed to provide specific facts to support claim).

Therefore, the Court DENIES Petitioner's claim of ineffective assistance of counsel with respect to the cell-phone evidence.

### 3. Filing a Motion Contrary to Petitioner's Understanding and Strategy

Next, Petitioner alleges that his trial counsel was ineffective because he filed a motion to dismiss on June 13, 2013, (Dkt. No. 1138-1), that was contrary to his understanding of the contents of the motion. (Dkt. No. 2195 at 13.) According to Petitioner, the Government used a letter that he wrote to the court requesting withdrawal of the motion to falsely demonstrate Petitioner's aspirations to become a member of the Mexican Mafia. (Dkt. No. 2195 at 13.) The Government counters that it is not ineffective advocacy for a defense counsel to reject engaging in arguments that strain credibility. (Dkt. No. 2277 at 6.)

The motion to dismiss filed by Petitioner's counsel argued Petitioner was a victim of extortion by the Mafia and therefore cannot be charged as a co-conspirator, aider, or abettor, even though payment may facilitate the activities of a RICO organization. (Dkt. No. 1138-1 at 14.) Petitioner wrote a letter to the court requesting withdrawal of the motion, explaining that, contrary to his counsel's motion, he was not a victim of the Mafia and did not acknowledge its existence. (Dkt. No. 1232.) He further stated the

1   motion was filed without his consent. (*Id.*) On August 2, 2013, defense counsel filed a

2   notice of withdrawal of his motion to dismiss. (Dkt. No. 1259.)

3        According to the Government's sentencing memorandum, trial evidence revealed

4   "it is a violation of the rules of the Enterprise to even admit the Mexican Mafia exists – as

5   [Petitioner's] attorney had done in the motion he wanted stricken." (Dkt. No. 1504 at 16.)

6   Therefore, the Government argued, the letter evidenced Petitioner's continued desire to

7   become a Mafia member because of its clear refusal to acknowledge the Mafia's

8   existence. (*Id.*)

9        First, if Petitioner is alleging that but for counsel's action of filing a motion

10  contrary to an agreeable defense strategy, he would not have written a letter to the court

11  that was ultimately used against him at sentencing, Petitioner's claim of ineffective

12  assistance of counsel fails because "appointed counsel, and not his client, is in charge of

13  the choice of trial tactics and the theory of defenses." *See United States v. Wadsworth*,

14  830 F.2d 1500, 1509 (9th Cir. 1987). Nonetheless, trial counsel withdrew the motion to

15  dismiss, (Dkt. No. 1261), and Petitioner does not allege that he did not agree with the

16  defense strategy his trial counsel put forth at trial, (*See* Dkt. No. 1259).

17       Next, even though the Government cited the letter in its sentencing memorandum,

18  there is no evidence that the use of the letter gives rise to a "reasonable probability

19  sufficient to undermine the confidence in the outcome." *See Richter,* 562 U.S. at 112. At

20  the sentencing hearing, neither the Government nor the court mentioned the letter. (*See*

21  Dkt. No. 1696.) Whether Petitioner aspired to become or continue as a member of the

22  Mafia was not at issue. (*See id.*) Instead, the court was primarily concerned with whether

23  Petitioner's prior convictions and conduct related to the RICO conspiracy qualified him

24  as a Career Offender for sentencing purposes under U.S.S.G. § 4B1.1. (*Id.*) Making no

25  mention of the letter throughout the entirety of the sentencing hearing, the court stated,

26  "there is evidence to support Mata's testimony, and he was believable . . . and certainly

27

28

15

1  all these arguments were made to the jury, and they were convinced that Mr. Franco was

2  guilty of the RICO offense." (*Id.* at 25.)

3      Moreover, on direct review, the Ninth Circuit also noted the magnitude of evidence

4  the Government presented against Petitioner at trial. *See Barragan*, 871 F.3d at 697–98.

5  Thus, both the sentencing hearing transcript and the Ninth Circuit opinion show that the

6  letter was inconsequential against the backdrop of evidence presented at trial. In addition,

7  Petitioner does not allege that the letter was used against him at trial. (*See* Dkt. No. 2195;

8  Dkt No. 2318.) Consequently, by the time of sentencing after the jury trial, Petitioner's

9  letter did not provide any probative value because the evidence presented at trial itself

10  revealed Petitioner's involvement with the Mafia. *See Barragan* 871 F.3d at 697–98.

11  Hence, even if counsel filed a motion contrary to a defense strategy which Petitioner

12  agreed with, Petitioner did not suffer prejudice under *Strickland* when the letter was

13  incorporated into the Government's sentencing memorandum. *See Strickland*, 466 U.S. at

14  694.

15      Therefore, the Court DENIES Petitioner's claim of ineffective assistance of

16  counsel for filing a motion contrary to Petitioner's understanding and his defense

17  strategy.

18              **4.    Sentencing Errors**

19      Petitioner raises two instances of sentencing errors by his trial counsel. (Dkt. No.

20  2195 at 13–14.) First, Petitioner contends that his sentence was improperly elevated

21  because his attorney failed to correct the Government's allegation in its sentencing

22  memorandum that Petitioner's conviction in 2009 was for threatening a witness in a gang

23  homicide case rather than conspiracy to dissuade a witness in a case involving a stolen

24  vehicle. (*Id.*) The Government concedes that the defendant in the case for which

25  Petitioner was attempting to influence had not been charged with murder but urges that

26

27                                  16

28

1    the focus at Petitioner's sentencing was on his actions attempting to dissuade a witness

2    rather than the charges against the defendant he was trying to help. (Dkt. No. 2277 at 7.)

3          Here, Petitioner's counsel sufficiently advocated on behalf of his client at

4    sentencing. *See Griffin v. Benedetti*, 773 F. Supp. 2d 947, 962 (D. Nev. 2011) (holding no

5    IAC claim where defendant's counsel did not object to the prosecution's reference to

6    facts in an underlying case because, in part, the defendant did not present authority or

7    evidence that an objection would have changed the outcome of the sentencing

8    proceeding). In the Government's sentencing memorandum, it relied in part on

9    Petitioner's 2009 conviction for dissuading a witness by force or threat of force as a basis

10    for increasing the statutory maximum sentencing guidelines for career offenders with

11    prior convictions for crimes of violence. (Dkt. No. 1504 at 4–8.) At sentencing,

12    petitioner's counsel attacked the classification of the offense as a crime of violence and

13    against the Government's suggested enhancements. (Dkt. No. 1696 at 14–17.) The court

14    stated it was not convinced that Petitioner was a career offender, but that it did not make

15    a difference because of the sentencing guidelines category his actions charged in the

16    instant case placed him in. (*Id.* at 33.)

17          Therefore, under *Strickland,* the Court finds that trial counsel's representation fell

18    well within the "wide range of reasonable professional assistance." *See Strickland*, 466

19    U.S. at 689. Additionally, Petitioner has not shown that counsel's objection to the

20    underlying case in the 2009 conviction, the defendant of which was not discussed at

21    sentencing, would have changed the outcome of the sentencing proceeding. *See Griffin*,

22    773 F. Supp. 2d at 962. As such, the Court denies Petitioner's ineffective assistance of

23    counsel claim with respect to trial counsel's alleged failure to challenge the qualification

24    of Petitioner's 2009 conviction as a crime of violence for sentencing purposes.

25          In the second instance of a sentencing error, Petitioner alleges that because his

26    attorney improperly accepted a false allegation that Petitioner verbally threatened Cruz,

27

28

the Government's cooperating witness, Petitioner received a higher sentence. (Dkt. No. 2195 at 14.) The Government claims that there were two events related to Cruz: (i) a threat of harm to Cruz and his family if Cruz did not testify according to Petitioner's direction, (Dkt. No. 1504-2 at 2); and (ii) a physical beating of Cruz in the Vista Detention Facility in 2011. (Dkt. No. 2277 at 6.)

Here, Petitioner's counsel sufficiently advocated on his behalf contrary to Petitioner's claim. Specifically, Petitioner's trial counsel argued that Cruz's testimony did not provide evidence of Petitioner's involvement in the acts of violence against him, including the threats and physical violence against him. (Dkt. No. 1516 at 2.) In Petitioner's sentencing brief, counsel argued:

> the government called [] Cruz to testify, and no evidence of Mr. Franco's involvement in the acts of violence against him was provided. The government's attempted reliance on hearsay police reports and unverified points and authorities prepared by counsel for the government is inadequate and lacks sufficient reliability to establish these issues. The government's request under various groupings to enhance the sentence for violence, threats, bodily injury, or obstruction of justice must be denied.

(*Id.* at 11.) Moreover, at the sentencing hearing, defense counsel vigorously objected to the use of the beating of Cruz for purposes of sentencing. (Dkt. No. 1696 at 21:19–22 ("None of them mention this guy, Everst Cruz, the beating of [] Cruz. Nowhere does it mention that he ordered the beating of this guy. They admit that Rudy Espudo ordered the beating of [] Cruz.").) He further argued "[t]here was no proof before the court, before the jury, that he had ordered that, number one, and number two, his means of communication were so limited, how could he have communicated with Francisco Gutierrez to beat up this guy? I just don't understand how the government is bootstrapping this." (*Id.* at 21:5–22:5.) In response to the Government's argument and proof, defense counsel further persisted arguing, "[f]orgive me, your honor, there's

18

evidence that he did communicate with his mother, but in those conversation recorded in video and in audio, there's no mention about these instances of violence." (*Id.* at 22:22–25.) The record plainly contradicts Petitioner's claim that his counsel accepted the Government's allegations regarding Cruz.

Furthermore, even if the Court characterizes trial counsel's argument as a concession, on direct review the Ninth Circuit rejected Petitioner's argument that the district court erred in attributing to him predicate acts of which he was acquitted of or not formally charged with. *Barragan*, 871 F.3d at 716. Therefore, had trial counsel improperly conceded that Petitioner was formally charged with threatening Cruz, Petitioner would still not have suffered from prejudice because the "district court may consider uncharged, relevant conduct" at sentencing." *Id.* (quoting *United States v. Ballew*, 40 F.3d 936, 943 (8th Cir. 1994)). Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim with respect to his trial counsel's alleged acceptance of the Government's contentions regarding Cruz.

In sum, the Court DENIES Petitioner's claim of ineffective assistance of counsel as to the alleged sentencing errors.

### 5.   Failure to Seek a Concurrent Sentence

Lastly, Petitioner argues that his counsel provided the court with improper information as to how the law is applied to concurrent federal and state court sentences and as a result, he received a higher sentence. (Dkt. No. 2195 at 14.)

Petitioner's argument is without merit. Petitioner was sentenced to 240 months to be served concurrently with the Superior Court of California, County of San Diego, case number SCN250257, with vocal support from his counsel and virulent opposition from the Government. (Dkt. No. 1589 at 2; Dkt. No. 1696 at 37:22–39:15.) Petitioner does not allege in his Petition that he is not receiving the benefit of a concurrent sentence. (*See* Dkt. No. 2195.) In fact, the Ninth Circuit declined to consider Petitioner's "claim of

1  credit for time served in state custody" because he informed the court it was moot.

2  *Barragan*, 871 F.3d at 719 n.35. Whether Petitioner's counsel misapplied the law for

3  state and federal concurrent sentences at sentencing, Petitioner was not prejudiced by the

4  counsel's error. *See Patrick*, 2008 WL 3861690 at *2 ("The focus of the prejudice

5  analysis is on whether the result of the proceeding was fundamentally unfair or unreliable

6  because of counsel's ineffectiveness.") (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369

7  (1993)).

8       The Court DENIES the ineffective assistance of counsel claim concerning his

9  concurrent sentence. Accordingly, in sum, the Court DENIES Petitioner's first ground for

10  his motion to vacate, set aside, or correct sentence pursuant to § 2255 for the claim of

11  ineffective assistance of counsel.

12       **D.    *Brady* Violation**

13       Petitioner contends that the Government withheld two forms of exculpatory

14  evidence that would have impeached Mata and Cruz's testimony: (a) handwritten "kites"[4]

15  and photos of the "kites" taken on an illegal cell phone turned over to Donovan; and (b)

16  recordings of in-cell and cross-cell conversations from recording devices placed in

17  Petitioner's jail cell and air vent. (Dkt. No. 2195 at 14–17; Dkt. No. 2318 at 5.) The

18  Government alleges that Petitioner's claim fails on the merits because (1) the

19  Government did not possess any handwritten "kites" as Donovan staff did not maintain

20  possession of such notes, and the one relevant cell phone it possessed was made available

21  to defense counsel; (2) the Government did not have possession of any of the jail cell

22  recordings; and (3) Petitioner knew about the evidence yet failed to seek reasonably

23  available means to obtain the evidence. (Dkt. No. 2277 at 8–9.) Petitioner states in reply

24  

25  

26  [4] Petitioner raises for the first time in his reply brief a new allegation that the Government failed to
turnover the physical handwritten "kites" during Discovery. (Dkt. No. 2318 at 4.)

27       20

28

that the Government had a duty to secure and provide the cell recordings, handwritten "kites", and photographs of the "kites" because they were within the Government's power to secure. (Dkt. No. 2318 at 5.)

A prosecutor's failure to disclose favorable evidence to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87. Evidence is material if there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 110 (1976). To establish that the Government's failure to turn over evidence violates *Brady*, Petitioner must demonstrate (1) the evidence was suppressed by the government either willfully or inadvertently; (2) the evidence was favorable to the accused because it was either exculpatory or impeaching; and (3) prejudice resulted from the failure to disclose. *See Strickler v. Greene,* 527 U.S. 263, 280–81 (1999).

### 1.   Handwritten "Kites" and Cell Phone Photographs of "Kites"

With respect to the "kites" and cell phone photographs of them, Petitioner has not shown that the prosecution suppressed any handwritten notes or cell phone photos of the notes because there is no evidence that the prosecutor was in possession of the disputed evidence. *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (stating that "the government has no obligation to produce information which it does not possess or of which it is unaware").

Mata testified that he occasionally provided notes to the Donovan staff or took photos of the "kites" with one of multiple smuggled cell phones he had while in custody. (Dkt. No. 1688 at 116–17; 121–23.) Mata further stated that he had two cell phones and

12-CR-0236-GPC-3
19-CV-493-GPC

1    used at least ten smuggled cell phones at Donovan. (*Id.* at 121–23.) When asked how he

2    received these cell phones, Mata stated, "[t]hey would be smuggled in through various

3    ways, whether it be through stashing, through visiting." (*Id.*) Mata further testified on

4    redirect that he did not keep all his cell phones in his jail cell. (*Id.* at 123.)

5         While Mata's testimony reflects that he used many cell phones while at Donovan,

6    the record reflects that only *one* cell phone was seized. (Dkt. No. 1698 at 19:3–9.)

7    Petitioner's trial counsel, who expressed grave concern for potentially suppressed

8    evidence of "kites" many times throughout the trial, subsequently traveled to Donovan at

9    the direction of the court to investigate whether the prison's staff maintained any

10   evidence of physical kites or photos of the kites taken by Mata. (*Id.*) Petitioner also

11   concedes that his trial counsel went to Donovan and found no exculpatory evidence.

12   (Dkt. No. 2195 at 13.) The trial court subsequently found there were no *Brady* violations

13   regarding the cell phone evidence. (Dkt. No. 1699 at 13:10.)

14        Further, Petitioner argues that discovery provided reports by task-force agents

15   which referred to the "kites" between Petitioner and Mata, none of which were turned

16   over. (Dkt. No. 2318 at 4.) However, the Government was asked about the existence of

17   this possible *Brady* material during trial. (Dkt. No. 1698 at 18:24–20:15). The

18   Government told the court they asked Donovan if the physical handwritten notes or other

19   phones with photographs of the "kites" were still in the prison's possession but were told

20   "Donovan Prison seizes approximately 30 to 50 phones a month. They are not keeping

21   these phones around. They're destroying these phones. They are not maintaining the

22   hundreds of kites that they maintain every month. . . . They have told us they do not have

23   those kites, they did not maintain them . . ." (*Id*. at 20:3–13.) Thus, the Government

24   cannot produce evidence that is no longer in existence or under its control. *See Sanchez*,

25   50 F.3d at 1453.

26

27                                              22

28

1     Therefore, the Court DENIES Petitioner's claim with respect to the "kites" and cell

2  phone photographs of them because Petitioner failed to demonstrate that the Government

3  suppressed evidence. *See Strickler*, 527 U.S. at 280–81.

4                    **2.     Inter-cell Recordings**

5     Petitioner cannot prevail on a claim for a *Brady* violation if he was "aware of the

6  essential facts enabling him to take advantage of any exculpatory evidence." *United*

7  *States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986) (quoting *United States v. Brown*, 582

8  F.2d 197, 200 (2d Cir. 1998)). To meet the constitutional standard of materiality, it must

9  be shown the "defendant would be unable to obtain comparable evidence by other

10  reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (9th Cir. 1986).

11     Here, the record reflects that the defense knew of the existence of in-cell recording

12  devices as Petitioner's trial counsel was the one to bring up the recordings during the

13  cross-examination of a detective. (*See* Dkt. No 1395 at 31.) Because the defense knew

14  about the inter-cell recording devices, there can be no *Brady* violation with respect to the

15  recording devices. *See Trombetta*, 467 U.S. at 489. Therefore, the Court DENIES

16  Petitioner's *Brady* claim with respect to the inter-cell recordings. *See Shaffer*, 789 F.2d at

17  690.

18     Petitioner argues he was harmed by the Government's alleged withholding of

19  evidence when he was "wrongfully convicted due to [] Mata's selfserving [*sic*], distorted

20  testimony" and had his sentence "greatly lengthened." (Dkt. No. 2318 at 5.) However,

21  Petitioner has not shown that the evidence would have been favorable such as to overturn

22  his conviction. (*See id.*) As previously stated, there was "overwhelming" evidence linking

23  Petitioner, his mother and sister, and Mata to money payments to Mafia members from

24  "tax" collected in prison. *See Barragan*, 871 F.3d at 697–98, 708. Further, Petitioner has

25  not provided information as to what the cell phone evidence of "kites" would actually

26  contain that would raise significant doubt as to his conviction or sentence. (*See* Dkt. No.

27                                   23

28

2196; Dkt No. 2318.) The mere possibility that undisclosed information could potentially have been helpful is not sufficient to prevail on a *Brady* claim. *See United States v. Agurs*, 427 U.S. 97, 109–10 (2013).

Accordingly, the Court DENIES Petitioner's second ground for his motion to vacate his sentence under § 2255 on a *Brady* violation.

## IV.   CERTIFICATE OF APPEALIBILITY

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner is not able to make a substantial showing of a denial of a constitutional right. The Court finds that reasonable jurists would not find the Court's assessment of Petitioner's § 2255 claims debatable or wrong. Therefore, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## V.   CONCLUSION

For the reasons discussed above, the Court DENIES Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. The Court also DENIES a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  January 20, 2022

Hon. Gonzalo P. Curiel
United States District Judge